[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter is the defendant's postdissolution motion to modify a child support order.
On August 12, 1991, the court, Jackaway, J., rendered a judgment dissolving the parties' marriage, which judgment adopted the provisions of a separation agreement entered into by the parties on August 7, 1991. Section 5 of that agreement obligated the defendant to pay to the plaintiff $305 per week as child support for a minor child who was issue of the marriage. This order deviated from the child support guidelines then in effect, under General Statutes §§ 46b-215a and 46b-215b, but the trial court never made a specific finding on the record that the application of the guidelines would be inequitable or inappropriate.
On October 20, 1993, the defendant filed a motion to modify the $305 weekly order on the basis that the original child support order substantially differed from the guideline figure. On November 8, 1993, the court, Klaczak, J., held an evidentiary hearing and concluded that the defendant's motion to modify was actually an attempt to undo the agreement reached by the parties at the time of the dissolution (Transcript of November 8, 1993, p. 77). The court granted the defendant's motion to the extent that CT Page 11727 plaintiff agreed that the child support obligation could be reduced to $265 per week (Transcript of November 8, 1993, p. 78). The reduced weekly order still substantially exceeded the guideline amount, and again the court made no specific finding on the record justifying such a deviation.
On March 25, 1994, the defendant filed another motion to modify child support again claiming that the new order deviated from the guideline presumption. The motion contains no allegation that the parties' financial circumstances have substantially changed. On September 20, 1994, the court, Sferrazza, J., rendered a preliminary, written decision determining that, despite the absence of an allegation of change of circumstances, the defendant was entitled to pursue another motion to modify child support because new guidelines had since gone into effect and because of the lack of a previous, specific finding regarding the need for deviation, Gaby v. Gaby, Superior Court, Tolland J.D., d.n. 47344 (September 30, 1994).
As a result of that determination, this count, on November 14, 15, and 16, 1994, conducted an evidentiary hearing on the motion to modify. The court finds the following facts. During the pendency of the dissolution action, the parties represented themselves and used the services of a mediator, Courtney Bourns, to reach an accord regarding the issues surrounding the dissolution. Neither party is trained in the law, and both were unaware that reasons for departing from the child support guidelines ought to be related to the court.
At the evidentiary hearing the plaintiff testified that she and the defendant, with the assistance of the mediator, determined that the child support guidelines at the time of the dissolution resulted in a figure of child support to be provided by the defendant of $194 per week. She also stated that the defendant agreed, instead, to an order obligating him to pay $305 per week in child support because the plaintiff was agreeing to assume full liability for a $43,000 outstanding debt, secured by a second mortgage on the family residence, and because the plaintiff agreed to forego any claim for alimony, except in the event of her, physical incapacitation. She explained that the guidelines amount was specifically deviated from to compensate her for her assumption of the defendant's liability on the second mortgage and her abandonment of any alimony claim.
The defendant also testified at the hearing. He never denied CT Page 11728 that the reason why he originally agreed to pay the plaintiff $305 per week in child support, as opposed to the guideline figure of $194 per week, was to compensate the plaintiff for her assuming sole responsibility for the second mortgage and foregoing alimony. He did strongly disagree as to how the proceeds acquired by the loan underlying the second mortgage were spent. He maintains the funds were used to improve the residence and pay family bills. The plaintiff maintains she never really knew how he spent the money. The court finds this disagreement insignificant to the resolution of the case.
Credibility is for the trier-of-fact to determine. The court finds that the plaintiff's testimony as to the agreement to be both credible and accurate. The defendant offered no reasonable explanation as to why he agreed to pay and did pay $305 per week as child support when the guidelines amount was $194 per week. The court concludes that the parties agreed, at the time of the dissolution, that the defendant would pay enhanced child support because the plaintiff was assuming a substantial debt for which the defendant was otherwise liable and was foregoing alimony. The enhanced child support equalled the difference between the actual order, $305 per week, and the guidelines figure, $194 per week. Except for credibility evaluation, the purposes for which the second mortgage money was spent are irrelevant. What is significant is that the parties' reason for exceeding the child support guidelines amount was to compensate the plaintiff for taking over the defendant's obligation under the second mortgage and her relinquishment of any alimony claim.
 I
In compliance with the dictates of Favrow v. Vargas,231 Conn. 1, 25 (1994), the court proceeds to calculate the current child support guidelines amount for the defendant and finds that amount to be $164 per week. The details of this calculation are set forth in a worksheet appended to this memorandum.
 A.
In arriving at this figure, the court declines to include a downward "adjustment" requested by the defendant of $25 per week, which amount is the defendant's cost for court-ordered life insurance. The dissolution judgment incorporated section 8 of the parties' agreement which section requires the defendant to maintain $180,000 worth of life insurance on his life for the benefit of the CT Page 11729 minor child until the child reaches majority. The defendant contends he is entitled to a credit for these payments against his child support obligation because the life insurance provision ordered by the court exists to insure the financial well-being of the child even if the defendant should die while the child is a minor.
The defendant acknowledges that the current child support guidelines make no allowance for such payments. He also acknowledges that earlier versions of the guidelines specifically provided for a deduction from gross income for such premium payments, see e.g. p. 11 of Child Support Guidelines, effective March 1, 1991. He also concedes that the Child Support Guidelines Commission specifically deleted this deduction from the current guidelines. The defendant asks the court to find that the current guidelines are arbitrary and capricious by omitting such a deduction. The court rejects this contention.
As the plaintiff aptly pointed out, if the defendant survives to his child's eighteenth birthday, he will recoup his payments if he chooses to. Also, permitting such a deduction or credit invites obligors to invest heavily in life insurance claiming that such payments satisfy child support responsibilities while providing little by way of actual benefit for the child and conserving such assets for the obligor when the child attains majority. The court finds that the Commissions's decision to delete such credit is neither irrational nor arbitrary. Consequently, the court has declined to credit the defendant with $25 per week against the guidelines figure.
 B.
The defendant also contends that he should receive credit against the guidelines figure for payments he has made, amounting, to $300, for one-half of uninsured, unreimbursed orthodontia expenses. The dissolution judgment ordered both parties to share such expenses equally. The court also rejects this contention.
Again, the defendant concedes that the current support guidelines make no general provision for deducting or crediting such payments. Section 46b-215a-3 (b)(2)(B) of the guidelines does permit the court to deviate from the guideline figure for "unreimbursable medical expenses" if these expenses are "extraordinary and exist on a substantial and continuing basis." The $300 orthodontia expense falls far short of meeting this CT Page 11730 deviation criterion. In any event, the plaintiff incurred an identical obligation, and these mutual expenses would appear to offset each other.
 II
The court now addresses whether it can properly consider the reasons behind the parties' original agreement to exceed the guidelines figure for the defendant's child support obligations, viz. to compensate the plaintiff for assuming full liability for the second mortgage debt and abandoning any alimony claim.
The permissible deviation criteria are contained in § 46b-215a-3
of the current guidelines. Subsection (b)(5) of that section indicates that, when the court finds that such consideration will not result in a lesser economic benefit to the child, "it may be appropriate to deviate from the guidelines amount for . . . (A) division of assets and liabilities
(B) provision of alimony . . . ."
The defendant argues that the court is barred from considering the original purpose of the enhanced child support because the court which heard the dissolution matter originally found no reason for deviating from the guidelines. The court disagrees. The most that can be gleaned from the dissolution court's inaction is that that court was unaware of the need to make a specific finding. Clearly the dissolution court deviated significantly from the guidelines. If that court specifically found no basis existed for deviation, no deviation would have been ordered.
The court concludes that it has both the power and the duty to examine the rationale for the original $305 per week order. The parties knowingly entered into an agreement which exceeded the guidelines figure for child support by the defendant. They did so because of an assumption of significant liability by the plaintiff and her relinquishment of the opportunity to obtain alimony. The defendant's motion to modify is based strictly on the adoption of new guidelines and the absence of a specific, previous finding on the record that the application of the guidelines was inequitable or inappropriate. The basis for the defendant's motion to modify is General Statutes § 46b-86 (a). That statute states in part:
 "In determining whether to modify a child support order based on a substantial deviation from such child support guidelines CT Page 11731 the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division" (emphasis added).
Therefore, the court is obligated to consider factors such as the allocation of liability for the second mortgage debt and the forbearance of alimony in the settlement agreement as incorporated in the dissolution judgment.
The court specifically finds that the plaintiff has demonstrated, by a preponderance of the evidence, that the application of the child support guidelines would be inequitable and inappropriate in this case. The court bases its decision to deviate from the guidelines figure on the criteria set forth in § 46b-215a-3 (b)(5). To allow the defendant to gain the benefit of being excused from the large second mortgage debt and the possibility of paying alimony and then to renege on his agreement to compensate for this gain, and the plaintiff's concomitant reduced financial position, by acceding to his demand for strict application of the guidelines amount of child support would be inequitable and unjust. The plaintiff's ability to provide for the financial needs of the minor child have been and continue to be curtailed by her added burden of the full liability for the second mortgage debt, which she has since consolidated with the first mortgage on the residence. The child and the plaintiff should not suffer fiscally because the defendant became dissatisfied with the child support arrangement which he voluntarily entered into.
As noted above, the parties' original agreement deviated upward from the then-existing child support guidelines amount of $194 per week by $111 per week for a total payment of $305 per week. Under the current guidelines, the baseline figure for child support owed by the defendant is $164 per week, or $30 per week less than under the previous guidelines. The plaintiff has already agreed that the defendant's obligation be reduced to $265 per week, i.e. $40 per week less than the original order. The court finds no basis for reducing the order further, given the fact that the plaintiff has fulfilled and continues to fulfill her added financial obligation under the original order.
For these reasons, the motion to modify child support is denied.
Sferrazza, J. CT Page 11732
APPENDIX A
 CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES ------------------------------------------------ WORKSHEET A — Page 1 --------------------
--------------- -------------- --------------------- MOTHER FATHER NAME OF CUSTODIAN
COURT __________ D.N./CASE NO. ________ NUMBER OF CHILDREN ____
 CHILD'S NAME DATE OF BIRTH CHILD'S NAME DATE OF BIRTH ------------ ------------- ------------ ------------- ________________ _____________ ____________ _____________ ________________ _____________ ____________ _____________ ________________ _____________ ____________ _____________
 I. Net Income Computation (Weekly amounts) MOTHER FATHER --------------------------------------------------------------------- 1. Gross income (attach verification) $ 847.48 $1,297.54 ------- -------- 2. Number of exemptions for tax purposes 1 2 ------- -------- 3. Federal income tax $ 136.23 $ 276.29 ------- -------- 4. State and local income tax $ 21.16 $ 58.39 ------- -------- 5. Social security tax or mandatory retirement $ 64.83 $ 87.79 ------- -------- 6. Health insurance premiums (other than child) $ 0 $ 0 ------- -------- 7. Union dues or fees $ 4.68 $ 11.00 ------- -------- 8. Unreimbursed work-related day care $ 56.00 $ 0 ------- -------- 9. Other alimony and child support orders $ --- $ --- ------- -------- 10. Sum of lines 3 — 9 — $ 282.90 $ 433.47 ------- -------- 11. Net income (income 1 minus line 10) $ 564.58 $ 864.07 ------- --------
II. Current Support Determination CT Page 11733 --------------------------------------------------------------- 12. Combined net weekly income (nearest $10.00) $ 1430 -------- 13. Basic obligation (from schedule) $ 283 -------- 14. Check here if noncustodial parent is a low-income obligor (see instructions) --------
15. Child's health insurance premium $ $ 22.50 ------- ------- 16. Total obligation (Line 13 minus noncustodial parent's line 15 amount if line 14 is checked; line 13 plus line 15 total for all other cases) $ 305.50 --------- 17. Each parent's decimal share of line 12 (If line 14 is checked, skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18.) .39 .61 -------- -------- 18. Each parent's share of the total obligation (Line 17 times line 16 for each parent) $ 119.15 $ 186.36 ------- ------- 19. Health insurance premium adjustment $ $ 22.50 ------- ------- 20. Social security benefits adjustment $ $ ------- ------- 21. Sum of lines 19 and 20 (for each parent) $ $ 22.50 ------- -------- 22. Recommended support amounts (Line 18 minus line 21) $ $ 163.86 ------- -------- 23. Current support order (Noncustodial parent(s) only. If different from line 22 amount, explain in section VI. $ $ ------- --------